IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JULIAN TERENCE MARTIN, JR., | ) | |
| ID # 2026170, | ) | |
| Petitioner, | ) | |
| vs. | ) | No. 3:17-CV-2226-S  (BH) |
| | ) | |
| LORIE DAVIS, Director, | ) | |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | Referred to U.S. Magistrate Judge |
| Respondent, | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Special Order 3-251*, this habeas case has been referred for findings, conclusions, and recommendation.  Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I.  BACKGROUND

Julian Terence Martin, Jr. (Petitioner), an inmate currently incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), filed a § 2254 petition for writ of habeas corpus challenging his conviction for murder.  The respondent is Lorie Davis, Director of the Texas Department of Criminal Justice (TDCJ), Correctional Institutions Division (Respondent).

### A.    State Court Proceedings

Petitioner was indicted for murder in Cause No. F13-59221 in Criminal District Court No. 6 of Dallas County, Texas, on September 25, 2013.  (*See* doc. 13-13 at 21.)[1]  On October 7, 2014, counsel filed a motion for the appointment of an expert to examine Petitioner for competency and

---

[1]  Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

for a competency hearing. It stated that he "exhibited confused and fragmented thought processes[,

... a blunted affect, emotional withdrawal, confusion, and a limited ability to concentrate[, and he]

does not appear [to] exhibit an intellectual capacity consistent with his physical age." (doc. 13-13

at 61.) On October 30, 2014, the court appointed an expert to evaluate Petitioner's competency.

(doc. 13-13 at 61, 129.) The record does not contain anything else about Petitioner's competency

or show that there was a competency hearing.

Petitioner pleaded not guilty, and the case was tried before a jury on September 21-24, 2015.

Before jury selection, on September 21, 2015, the prosecutor abandoned the allegation in the

indictment that Petitioner caused the death of the victim by stabbing and cutting him with a knife,

a deadly weapon. The prosecutor proceeded with the allegation that Petitioner intended to cause

serious bodily injury to the victim and committed an act clearly dangerous to human life by stabbing

and cutting the victim with a knife, a deadly weapon, and thereby caused his death. (docs. 13-13

at 22; 13-15 at 6.)

According to the evidence at trial, on August 17, 2013, Petitioner and a friend were at a bar.

The friend was ejected for taking off his shirt and being aggressive, and he and Petitioner left the

bar. (doc. 13-16 at 81-83, 89-90.) Outside the bar, the friend got into a fight with two men, and

Petitioner then hit one of the men. (*Id*. at 102-03.) The victim, who had been in the bar, tried to

calm the situation and said that there was no need for them to be fighting. (*Id*. at 104-05.) Then the

victim and one of the men began fighting. (*Id*. at 108.) The victim unbuttoned his shirt, and then he

and Petitioner began fighting. (*Id*. at 107, 128.) A witness video-recorded the incident. (*Id*. at 128.)

The recording shows that Petitioner pulled a knife out of his pocket and appeared to stab the victim.

(*Id*. at 130, 132-33.) The witness who video-recorded the incident saw blood on the victim's chest,

realized that he had been stabbed, and called 911. (*Id*. at 129, 145.) The victim died as a result of a stab wound through the heart. (doc. 13-17 at 53.) The wound was five inches deep. (*Id*.)

Petitioner was arrested the next day, and a pocket-knife with a three-inch blade was recovered from his apartment. (*Id*. at 40, 41.) DNA consistent with the victim's was on the knife. (*Id*. at 85.)

In closing argument, counsel asked the jury, "Did that three and a half inch knife make the five-inch stab wound that killed [the victim]? ... Where did the five-inch knife go? We don't know." (*Id*. at 107-108.) The prosecutor then argued:

> And, ladies and gentlemen, with regards to the wound, I think the detective said three and a half inches. We didn't ask the medical examiner, you know, how does it make a five-inch – five-inch hole into [the victim's] body. But you saw the force that the defendant was doing with his arm like this, and you saw the drive. And when you get a knife three and a half inches in flesh and you keep pushing, it goes further than the blade.

(*Id*. at 118.) Counsel objected that it was outside the record, and the court sustained the objection. Counsel did not request an instruction to disregard or move for a mistrial. (*Id*.) The prosecutor continued, "Ladies and gentlemen, use your common sense. That's what you're here for. The size of this entire knife is about seven inches. I'd say about eight or nine inches, actually." (*Id*.)

At the guilt phase, out of the jury's presence, Petitioner acknowledged that he had numerous opportunities to discuss with counsel the possibility of him testifying. He understood that he had a right to testify, but he did not want to testify. (*Id*. at 71.)

At the punishment phase, Petitioner acknowledged that he understood that he had been found guilty, and he had a right to testify on punishment. He understood that there were risks with testifying, but he knowingly and voluntarily wanted to testify. (*Id*. at 4-6.) He later changed his mind and no longer wanted to testify. The court explained that it was his right, but Petitioner chose

3

not to testify.  (*Id.* at 12-15.)

The jury convicted Petitioner of murder, and he was sentenced to 34 years' confinement. (doc. 13-13 at 188.)  The judgment was affirmed on appeal.  *Martin v. State*, No. 05-15-01306-CR, 2016 WL 4120671 (Tex. App.-Dallas July 29, 2016). Although Petitioner was granted an extension of time until October 28, 2016, to file a petition for discretionary review, he did not file a petition for discretionary review.  (doc. 13-9); *Martin v. State*, PD-0923-16 (Nov. 22, 2016).  Petitioner's state habeas application was signed on January 20, 2017, and received by the court on January 27, 2017.  (doc. 13-28 at 5, 21.)  On June 7, 2017, it was denied without written order.  (doc. 13-25); *Ex parte Martin*, WR-85,758-02 (Tex. Crim. App. June 7, 2017).

**B.    Substantive Claims**

Petitioner's amended habeas petition, received on September 1, 2017, raises the following grounds:

(1) The court failed to hold a competency hearing (ground 1);

(2) Petitioner was denied effective assistance of counsel for:

> (a) allowing him to stand trial despite evidence of his incompetency and failing to ensure that his competency was adequately investigated or that a competency hearing was held (ground 2);
>
> (b) failing to request a jury instruction on sudden passion (ground 4);
>
> (c) failing to request a curative instruction and a mistrial after the court sustained an objection to the prosecutor's argument (ground 5);
>
> (d) failing to object to the constructive amendment of the indictment (ground 6);

(3) There was no evidence that the knife was a deadly weapon (ground 3).

(*See* doc. 5 at 6-8.)  Respondent filed a response, and Petitioner filed a reply.[2]  (*See* docs. 14, 17.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case

---

[2]  Respondent's response addressed the claims raised in the original habeas petition, but not the claims raised in the amended petition.  (*See* docs. 3, 5, 14.)  Although some of the claims were raised in both petitions, each petition also raised claims that the other did not.

differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. COMPETENCY

In his first ground, Petitioner contends that he was denied due process because the court failed to order a competency hearing.

### A. Exhaustion

A petitioner must fully exhaust state remedies before seeking federal habeas relief. 28

U.S.C. § 2254(b).  To exhaust under § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir.1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982).  In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review or an application for writ of habeas corpus.  *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432.  A federal district court may raise the lack of exhaustion *sua sponte*.  *Shute v. State*, 117 F.3d 233, 237 (5th Cir. 1997).

Petitioner did not file a petition for discretionary review, and he did not raise this claim in his state habeas application.  (*See* doc. 13-28 at 10-18.)  The competency claim is therefore unexhausted.

## B.    Procedural Bar

Notwithstanding the lack of exhaustion, the claim is also procedurally barred from federal habeas review.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).  The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies, and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred.  *Id*.  In those cases, the federal procedural default doctrine precludes federal habeas corpus review.  *Id*.; *see also Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim that would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred).

Here, if Petitioner brought his unexhausted claim in a subsequent state habeas corpus

application, the Court of Criminal Appeals would consider the claim to be procedurally defaulted as a successive state habeas application under Article 11.07 § 4 of the Texas Code of Criminal Procedure, so his competency claim is also procedurally barred from federal habeas review. *See Nobles v. Johnson*, 127 F.3d at 423.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art. VI.  It guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687.  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id*. at 696.  The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient

8

performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).

Reviewing courts must consider the totality of the evidence before the finder of fact in assessing

whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466

U.S. at 695-96.

To show prejudice in the sentencing context, the Petitioner must demonstrate that the alleged

deficiency of counsel created a reasonable probability that his or her sentence would have been less

harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison

term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One

cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v.*

*Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief

under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v.*

*Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274,

282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not

raise a constitutional issue in a federal habeas proceeding").

A.    **Competency**

In his second ground, Petitioner contends that counsel was ineffective for allowing him to

stand trial despite evidence of his incompetency and for failing to ensure that his competency was

adequately investigated or that a competency hearing was held.

      1.    *Exhaustion and Procedural Bar*

Respondent argues that this claim is unexhausted and procedurally barred.

Petitioner did not raise this claim in his state habeas application. (*See* doc. 13-28 at 10-18.)

It is therefore unexhausted. *See Deters v. Collins*, 985 F.2d at 795. If Petitioner brought his

unexhausted claim in a subsequent state habeas corpus application, the Court of Criminal Appeals would consider the claim to be procedurally defaulted as a successive state habeas application under Article 11.07 § 4 of the Texas Code of Criminal Procedure, so this claim is also procedurally barred from federal habeas review.  *See Nobles*, 127 F.3d at 423.

Nevertheless, the Texas bar on successive or subsequent state habeas applications "will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1 (2012)).  A substantial claim is one that has some merit.  *Ibarra v. Davis*, 738 F. App'x 814, 817 (5th Cir. 2018).  An insubstantial claim is one that does not have any merit or is "wholly without factual support."  *Id*.

### 2.    *Merits*

Due process requires that a criminal defendant be competent to stand trial before he is prosecuted.  *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996).  The appropriate test is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402 (1960); *see also* Tex. Code Crim. Proc. art. 46B.003.  To prove prejudice for counsel's failure to raise an issue that the petitioner was incompetent, he must demonstrate that there is a reasonable probability that but for counsel's failure to raise the issue, he would have been found incompetent to stand trial.  *See Felde v. Butler*, 817 F.2d 281, 282, 283 (5th Cir. 1987).

Counsel's motion for the appointment of an expert to evaluate whether Petitioner was

competent suggested that Petitioner may not have been competent to stand trial because he

"exhibited confused and fragmented thought processes[, ... a blunted affect, emotional withdrawal,

confusion, and a limited ability to concentrate[, and he] does not appear [to] exhibit an intellectual

capacity consistent with his physical age." (doc. 13-13 at 61.) It did not assert that Petitioner lacked

the ability to consult with counsel with a reasonable degree of rational understanding, or that he

lacked a rational and factual understanding of the proceedings against him.  The state court granted

the motion, but the record does not indicate whether the evaluation occurred or any findings by the

expert.  The record does show that during trial, counsel and the court explained to Petitioner his right

to testify, and he acknowledged that he discussed the matter with counsel and ultimately decided that

he was not going to testify.  He also understood that he had been found guilty.  The record shows

that Petitioner understood the proceedings against him and that he was able to have discussions with

counsel about the case; it  does not indicate that he was incompetent.  Petitioner has not shown that

he was or would have been found to be incompetent.  Because this unexhausted claim of ineffective

assistance of counsel does not have merit, it is not a substantial claim that excuses the procedural

bar.  *See Ibarra*, 738 F. App'x at 817.

B.      **Jury Instruction**

        In his fourth ground, Petitioner contends that counsel failed to request a jury instruction on

sudden passion in the punishment phase.

        Under Texas law, if a defendant is convicted of murder, he may raise sudden passion as an

issue at punishment.  If it is proven by a preponderance of the evidence that he caused the death

while under the immediate influence of sudden passion, the murder conviction will be lowered from

a first-degree felony to a second-degree felony.  *See* Tex. Penal Code § 19.02(d).  "Sudden passion"

means "passion directly caused by and arising out of provocation by the individual killed ... which

passion arises at the time of the offense and is not solely the result of former provocation." Tex.

Penal Code § 19.02(a)(2). "Adequate cause" means "cause that would commonly produce a degree

of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind

incapable of cool reflection." Tex. Penal Code § 19.02(a)(1). An instruction on sudden passion is

warranted if it is supported by "some evidence," even if that evidence is "weak, impeached,

contradicted, or unbelievable." *Beltran v. State*, 472 S.W.3d 283, 290 (Tex. Crim. App. 2015).

Counsel submitted an affidavit in state habeas. He stated:

13. [The victim] was sitting with some friends on the porch of the [bar] observing the fight and left the porch to try to break up the fight. There was a particularly disturbing cell phone video of the ensuing encounter between [the victim] and [Petitioner] in which [Petitioner] appeared very much the aggressor. This combined with witness statements that confirmed [the victim] was indeed merely trying to stop the fight and that he indicated he did not intend or want to fight [Petitioner]. We had discussed this matter with [Petitioner] prior to trial, however he indicated that he did not wish to view the video.

14. I discussed possible defense strategies with all of the other attorneys involved and we all agreed that the statements and the tape, especially the one referenced above, would make it impractical to assert certain defenses and that attempting to do so after [the] jury had viewed the videos would only serve to cost us credibility and perhaps sympathy as well during the punishment phase.

15. We specifically discussed every defense; mitigation issue and potential lesser included offenses. Both before trial and before the charge conference we discussed the possibility of a sudden passion instruction—I am fairly sure that we discussed the matter with [Petitioner] specifically. [Petitioner] always maintains that he was acting out of fear.

. . .

17. Based on discussions among ourselves, facts related to us by [Petitioner], the tapes - and the one tape in particular - and the witness statements we did not believe the facts would support a finding of sudden passion nor that this should be our focus. The evidence adduced at trial in no way changed this and we felt that it simply did not indicate that [the victim] was the aggressor, that he initially provoked [Petitioner] or an absence of former provocation.

12

18. I believe we discussed the matter and believed that it was doubtful the evidence would even support a charge on sudden passion. We had all watched the one particular tape numerous times before trial and agreed that [Petitioner] looked aggressive and even frightening (we had extensive discussions on the mater). On the other hand, the State was presenting [the victim] as a good Samaritan who was merely trying to break up a fight before anyone was seriously injured.

19. Aside from the fact that the evidence did not support an argument that [the victim] was the initial aggressor, we were concerned about the jury perceiving our position as "Mr. Good Samaritan butted his nose in someone else's business and therefore got what he deserved, or at least can't complain." We elected to take another approach that we felt was more sustainable based on the evidence presented and what we perceived to be the juries' reactions to that evidence.

20. [Petitioner's] Petition seems to confuse several things. First he confuses the evidence and charges at the Guilt-Innocence and Punishment phases. Second, he apparently, mistakenly fear from the earlier fights with sudden passion if I understand his argument. We felt like it would be a mistake (and unsupportable) to argue [the victim] was the initial aggressor. If I recall correctly (and [Petitioner] appears to confirm that) we did argue that he was in several fights, a number [of] people were involved, that he was fearful (or perhaps even panicked) when [the victim] appeared.

(doc. 13-28 at 102-03.)

The state habeas court found that counsel's affidavit was true and correct and that Petitioner did not sustain his burden of showing that sudden passion was induced by the victim's provocation. (*Id*. at 94, 97.)  The court concluded that Petitioner did not show that counsel was ineffective for failing to request an instruction on sudden passion.  (*Id*. at 97.)

Counsel's reasons for not requesting an instruction on sudden passion and the state court's determination of this claim are supported by the record.  Petitioner has not shown that he was entitled to an instruction on sudden passion.  Counsel was not ineffective for failing to make a futile request.  *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections").  Petitioner has not shown that the state court's rejection of this claim was unreasonable.

**C.**     **Curative Instruction/Mistrial**

Petitioner's fifth ground contends that counsel failed to request a curative instruction and a

mistrial after the court sustained an objection to the prosecutor's argument about how Petitioner's

three-inch or three-and-one-half inch knife could have caused the five-inch stab wound.

Counsel stated in his habeas affidavit that:

10. During the trial of the case, the State elicited evidence that the stab wound suffered by [the victim] was five inches with respect to its depth. The State, as I recall, failed to elicit testimony from the medical examiner that this was in fact common because the skin gives way to allow the knife to puncture further than the physical length of the blade. If I recall correctly, the Medical Examiner's Office indicated to us that it would be unusual for a five inch blade to leave a five inch wound.

11. We explained this to [Petitioner] well before the closing that we would make the argument but a juror could poke himself with a finger and see the skin give way. We told him it was a throw away argument, but it was worth throwing out there. We made the argument, the State offered the explanation we anticipated although I do not recall his exact words. I do recall we objected and I think the objection was sustained (although the judge may have said something to the effect of, "The jury will recall the testimony"). I am sure [Petitioner's] contention that I did not move for a mistrial is correct. In the context of the proceedings, I would have been concerned that the jury would perceive such a request as petty.

(doc. 13-28 at 101-02.)

The state habeas court found that counsel's reason for not moving for a curative instruction

or mistrial was reasonable strategy.  The court noted that although hindsight might suggest that a

curative instruction would have been appropriate, counsel's trial tactic of not wanting to remind the

jury of the matter was reasonable, and it concluded that Petitioner did not show that counsel was

ineffective.  (*id.* at 96.)  Counsel's reasons for not requesting a curative instruction or a mistrial are

supported by the record, and Petitioner has not shown that a mistrial would have been granted.

Additionally, he has not shown how he was prejudiced.  There was evidence, including video

evidence, that Petitioner pulled out a knife and stabbed at the victim, and DNA found on Petitioner's knife was consistent with the victim. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

### D.        Constructive Amendment of Indictment

In his sixth ground, Petitioner contends that counsel failed to object to the constructive amendment of the indictment on the day that the trial began by abandoning the allegation of murder under Tex. Penal Code § 19.02(b)(1) (intentionally and knowingly causing death) and proceeding on the allegation of murder under § 19.02(b)(2) (intending to cause serious bodily injury and committing an act clearly dangerous to human life that causes death). He argues that because the indictment alleged the two theories of murder in the conjunctive, the State had to prove both theories, and that abandoning one theory lessened its burden.

"[A]lthough [an] indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). When alternative theories of the offense are submitted to the jury in the disjunctive, a jury may return a general verdict if the evidence is sufficient to support a finding of guilt under either theory submitted to the jury. *Id*. The State would have been required to prove only one theory of the offense to obtain a conviction. The abandonment of one theory alleged in the indictment did not lessen the State's burden and was therefore not a constructive amendment to the indictment rather than an abandonment of a legal theory. Petitioner has not shown that the state court's rejection of this claim was unreasonable.

### V.  SUFFICIENCY OF EVIDENCE

Petitioner's third ground contends there was no evidence that the knife used was a deadly

15

weapon as alleged in the indictment.  Respondent argues that this claim is procedurally barred.

A claim that "no evidence" supports a conviction is the same as a challenge to the legal sufficiency of the evidence.  *See Haley v. Cockrell*, 306 F.3d 257, 266–67 (5th Cir. 2002) (noting that a claim of "no evidence" is the same as a claim of insufficiency of the evidence), *vacated on other grounds*, 541 U.S. 386 (2004); *United States v. Jackson*, 86 Fed. App'x 722, 722 (5th Cir.2004) (per curiam) (applying insufficiency-of-the-evidence analysis to claim of "no evidence").

Under Texas law, it has long been held that challenges to the sufficiency of the evidence of a conviction must be raised on direct appeal.  *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding evidentiary sufficiency claims not cognizable in post-conviction, collateral attack); *West v. Johnson*, 92 F.3d 1385, 1389 n. 18 (5th Cir. 1996) (recognizing that this is a long-standing legal principle under Texas law).

Petitioner did not present this claim to the Court of Criminal Appeals on direct review, because he did not file a petition for discretionary review.  He raised a "no evidence" claim on state habeas, and the Court of Criminal Appeals denied it without written order.  That decision was an adjudication on the merits.  *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).  When the Court of Criminal Appeals denies a state application for writ of habeas corpus without written order, it implicitly denies sufficiency claims on the procedural basis that such claims are not cognizable on state habeas review.  *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).  When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review.  *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995).

16

Petitioner has procedurally defaulted any claim of insufficiency of the evidence under Texas law. This default constitutes an adequate and independent state procedural ground to bar federal habeas review of the claim. *See Reed v. Thaler*, 428 F. App'x 453, 454 (5th Cir. 2011) (citing *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004), and *Ex parte Grigsby*, 137 S.W.3d at 674)). The claim is therefore procedurally barred.

## VI.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary. Petitioner has not shown he is entitled to an evidentiary hearing.

## VII.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED** this 7th day of May, 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

17

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

18